JUDGE NATHAN         15 CV 00506

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com

Counsel for Plaintiff Dice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED JAN 23 2015 U.S.D.C. S.D. N.Y. CASHIERS

| | |
|---|---|
| JUSTIN DICE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br>vs.<br><br>CHANNELADVISOR CORPORATION, SCOT WINGO, DAVID SPITZ, AND JOHN BAULE,<br><br>Defendants. | CASE No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Justin Dice, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by ChannelAdvisor Corporation ("ChannelAdvisor" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that

1

substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of ChannelAdvisor common stock between November 6, 2014 and January 12, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against ChannelAdvisor and its most senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred and Defendant ChannelAdvisor conducts business in this District.

5. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Justin Dice as set forth in the accompanying certification, incorporated by

2

reference herein, purchased securities of ChannelAdvisor during the Class Period and has been damaged thereby.

7. Defendant ChannelAdvisor is organized under the laws of the Delaware and maintains offices at 381 Park Avenue South, New York, New York 10016. The Company's common stock is listed on the NYSE, an efficient market, under the ticker symbol "ECOM".

8. Defendant Scot Wingo ("Wingo") is, and was throughout the Class Period, ChannelAdvisor's Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

9. Defendant David Spitz ("Spitz") is, and was throughout the Class Period, ChannelAdvisor's President and Chief Operating Officer ("COO").

10. Defendant John Baule ("Baule") is, and was throughout the Class Period, ChannelAdvisor's Chief Financial Officer ("CFO").

11. The Defendants Wingo, Spitz, and Baule collectively are referred to herein as the "Individual Defendants." ChannelAdvisor and the Individual Defendants are referred to herein, collectively, as "Defendants."

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of ChannelAdvisor's common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

13. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ChannelAdvisor securities and other publicly-traded

3

securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ChannelAdvisor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class as all members Of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants as alleged herein;

(b) whether statements made by Defendants misrepresented material facts about the business, operations and management of ChannelAdvisor;

(c) whether omissions made by Defendants misrepresented material facts about the business, operations and management of ChannelAdvisor; and

(d) to what extent the members of the Class have sustained damages and the proper measure of damages.

17. A class action is superior to all other available methods for the fair and efficient

4

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

18. ChannelAdvisor provides cloud-based e-commerce solutions that enable retailers and manufacturers to increase global sales. Through its software-as-a-service ("SaaS"), the Company helps with e-commerce optimization by providing technology and strategic services to retailers and branded manufacturers connect with consumers online.

19. ChannelAdvisor has two streams of revenue: (i) fixed subscription fees plus implementation fees; and (ii) variable subscription fees.

20. The fixed subscription fee portion of revenue is based on a specified minimum amount of gross merchandise value ("GMV") that a customer expects to process through the Company's platform during the contract term. Along with the fixed subscription fee is an additional implementation fee for launch assistance and training.

21. The variable subscription fee is based on a specified percentage of GMV processed through the Company's platform in excess of the customer's specified minimum amount. Most of ChannelAdvisor's customers have a component of a variable subscription fee arrangement.

22. ChannelAdvisor uses customized pricing structures for each customer depending on the customer's specific situation. If a customer commits to a higher specified minimum GMV amount per month, then ChannelAdvisor will give the customer a lower fixed percentage fee on the committed GMV in the form of a volume discount.

23. The percentage fee assessed on the variable GMV in excess of the committed minimum for each customer is usually higher than the fee on the fixed, committed portion.

24. ChannelAdvisor has a mix of clients comprising of larger and smaller sized companies. Their customer based revenues can vary from under $15,000 per year to over $1,000,000 per year from each customer.

25. Since August of 2014, Defendants were aware of the Company's shift in its customer base from smaller clients to larger clients. On August 4, 2014, the Company held a conference call to discuss the Company's financial results for the second quarter of 2014. During this conference call, Defendant Spitz discussed the shift in the Company's clientele from smaller companies to larger companies, stating in relevant part:

- Channel Advisors "**saw an increase in customer unit churn at the lowest end of our customer base, on average, smaller sellers paying us less than $15,000 per year.** Although the resulting lost revenue, measured as a percentage of overall revenue, it was consistent with what we've seen over the last few years. **More of it was concentrated in smaller customers,** and thus had a larger than usual impact on our net customer unit growth."

- "**Put simply, in Q2, we lost an increased number of smaller customers and replaced them with larger,** and we believe more profitable customers slowing our net customer growth compared to recent quarters"

- "Overall, **this represents our continued, albeit gradual move upmarket to larger retailers and brands,** and while we never like to lose any business, **we are comfortable that we're placing losses at the low end of our customer base with larger customers is a healthy trend for our business.**"

- "We believe that over time, the low end of the market will continue to face fierce pressure among sellers as the competitive bar and e-commerce continues to rise that GMV will continue to migrate up the stack as the market evolves and as we execute on our path towards profitability over the next two to three years, something John will touch on momentarily, **an increased focus-on and concentration of larger customers is likely to improve the leverage in our model and our overall prospects for**

6

> profitability, even if from time to time this means we favor adding a smaller number of net larger customers in a period versus chasing a larger number of smaller, but ultimately less profitable customers."

- "**We already reject a lot of deals that come to our pipeline that aren't large enough,** but we're constantly tweaking that and our pricing change is an example of that."

(emphasis added).

26. During this conference call, Defendant Baule also discussed the shift in the Company's clientele from smaller companies to larger companies, stating in relevant part:

- "As David pointed out, **we saw a mix shift to an increasing number of larger deals, which led to an increase in our average deal size.**"

(emphasis added).

### Defendants' False and Misleading Class Period Statements

27. The Class Period begins on November 6, 2014, when the Company issued a press release announcing its financial results for the third quarter of 2014 and guidance for the fourth quarter and full year of 2014. The press release states, in relevant part:

**Financial Outlook**

Based on information available as of today, ChannelAdvisor is issuing the following guidance for the fourth quarter and full year of 2014:

Fourth Quarter 2014

- **Total revenue between $25.6 million and $26.1 million.**
- Adjusted EBITDA between $(0.7) million and $(0.1) million.
- Stock-based compensation expense between $2.7 million and $3.0 million.
- 24.9 million weighted average shares outstanding.

Full Year 2014

- **Total revenue between $86.7 million and $87.2 million.**
- Adjusted EBITDA between $(18.7) million and $(18.1) million.
- Stock-based compensation expense between $8.0 million and $8.3 million.

7

- 24.7 million weighted average shares outstanding.

(emphasis added).

28. On the same day, the Company held a conference call to discuss the financial results for the third quarter of 2014. During this conference call, Defendant Baule reiterated the Company's revenue guidance for the fourth quarter of 2014 and stated, "**Looking ahead to the fourth quarter, we are anticipating revenue of $25.6 million to $26.1 million...**" (emphasis added).

29. During the same call, Defendant Spitz stated the following with regards to the Company's s shift to larger customers:

- "We saw **rapid growth in our base of large customers...**"

- "Notably, we **continued to see the greatest expansion in our larger customers segments.**"

- "We've invested quite a lot in marketing over the last year, **one of the objectives being to increase our brand visibility and brand awareness amongst large retailers** and now with the acquisition of E-Tale, increasingly towards brands and manufacturers as well."

- "It is also worth noting that **the majority of our churn comes from our niche tenured and smallest customers.**"

- "**Small customers typically make up the majority of our churn on a net customer count basis,** but account for much smaller proportion of our overall revenue."

(emphasis added).

30. The true facts, which were known by Defendants, but concealed from the investing public during the Class Period, were as follows:

(a) ChannelAdvisors' shift in customer base away from smaller clients to larger clients posed a risk to the Company's financial performance as it impacts the revenue generated

8

from its variable subscriptions; and

   (b) Larger clients were given a discount in the percentage of GMV that goes to ChannelAdvisor for variable subscription, which results in lower revenue for the Company.

31. As a result of the foregoing, Defendants had led the market to expect certain expectations that were unreasonable during the Class Period.

### The Truth Emerges

32. On January 12, 2015, the Company issued a press release entitled "ChannelAdvisor Announces Preliminary Fourth Quarter 2014 Revenue Results," which lowered its revenue guidance for the fourth quarter of 2014. It states in relevant part:

> Based on information available as of the date of this release, **ChannelAdvisor expects revenue for the fourth quarter of 2014 to be approximately $23.7 million, compared to the prior guidance of revenue in the range of $25.6 to $26.1 million.** These results are preliminary and unaudited and are subject to change based on the completion of the company's normal quarter and year-end review process. As a result, these preliminary results may be different from the actual results that will be reflected in ChannelAdvisor's consolidated financial statements for the quarter ended December 31, 2014 when they are released.
>
> **"We are disappointed that the fourth quarter did not meet our guidance. We saw an unusual shift of gross merchandise volume (GMV) to larger customers this holiday season at the expense of smaller customers. Because larger customers enjoy volume discounts in the form of lower take rates, this shift translated to lower variable subscription revenue, even though overall GMV increased 31% year over year for the fourth quarter," said Scot Wingo, CEO of ChannelAdvisor. "This resulted in fixed subscription revenue for the fourth quarter growing approximately 27% while variable subscription revenue decreased approximately 5% compared to a year ago.** Despite this, we believe our fundamental value proposition, position in the market, and opportunities for continued growth remain intact. As fixed subscriptions grow as a percentage of overall revenue, we expect our overall visibility to improve as we look to continued growth in 2015. I want to emphasize that these financial results are preliminary and subject to change based on the completion of our normal quarter-end review process. We will provide additional financial details and customary metrics on our quarterly earnings call scheduled for February 5."

(emphasis added).

9

33.     On this news, shares of ChannelAdvisor fell $11.32 per share or more than 53% from its previous closing price to close at $9.83 per share on January 13, 2015, damaging investors.

## ADDITIONAL SCIENTER ALLEGATIONS

34.     As alleged herein, ChannelAdvisor and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding ChannelAdvisor, their control over, and/or receipt and/or modification of ChannelAdvisor's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning ChannelAdvisor, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

35.     ChannelAdvisor's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. §78u-5(b)(2)(A).

36.     Defendants are also liable for any false or misleading FLS pleaded because, at the

10

time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of ChannelAdvisor who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICATION OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

37. Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(a) The omissions and misrepresentations were material;

(b) The Company's securities traded in an efficient market;

(c) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(d) Plaintiff and other members of the Class purchased ChannelAdvisor securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

38. At all relevant times, the market for ChannelAdvisor securities was efficient for the following reasons, among others:

11

(a)     As a regulated issuer, ChannelAdvisor filed periodic public reports with the SEC; and

(b)     ChannelAdvisor regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: AFFILIATED UTE

39.     Neither plaintiffs nor the Class (defined herein) need prove reliance – either individually or as a class – because under the circumstances of this case, which involve omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## LOSS CAUSATION/ECONOMIC LOSS

40.     The market for ChannelAdvisor securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, ChannelAdvisor securities traded at artificially inflated prices during the Class Period Plaintiff and other members of the Class purchased or otherwise acquired ChannelAdvisor securities relying upon the integrity of the market price of ChannelAdvisor securities and market information relating to ChannelAdvisor, and have been damaged thereby.

41.     During the Class Period, as detailed herein, Defendants made false and misleading

statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of ChannelAdvisor securities and operated as a fraud or deceit on Class Period purchasers of ChannelAdvisor securities by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of ChannelAdvisor securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of ChannelAdvisor securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about ChannelAdvisor's business and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of ChannelAdvisor and its business and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing ChannelAdvisor securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of ChannelAdvisor securities was removed and the price of ChannelAdvisor securities declined dramatically, causing losses to Plaintiff and the other members of the Class.

## FIRST CLAIM

### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of ChannelAdvisor securities during the Class Period.

46. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ChannelAdvisor securities. Plaintiff and the Class would not have purchased ChannelAdvisor securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

14

48.     The Individual Defendants acted as controlling persons of ChannelAdvisor within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of ChannelAdvisor securities, the Individual Defendants had the power and authority to cause ChannelAdvisor to engage in the wrongful conduct complained of herein. ChannelAdvisor controlled the Individual Defendants and all of the Company's employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 22, 2015

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

*/s/ Laurence M. Rosen*

Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff Dice

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against ChannelAdvisor Corporation. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The ChannelAdvisor Corporation. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Justin
**Middle initial:**
**Last name:** Dice
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 12/15/2014 | 300 | 20.13 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:        **YES**

**Certification for Justin Dice (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 01/14/2015

*/s/ Justin Dice*